NO. 07-04-0255-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 27, 2005



______________________________




STEVE HAYDEN, D/B/A STEPHEN LIN HAYDEN CONSTRUCTION, APPELLANT



V.



SCOTT TRACTOR & EQUIPMENT CO., INC., APPELLEE




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 89,710-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

 Appellant Steve Hayden, d/b/a Stephen Lin Hayden Construction, appeals a
judgment notwithstanding the verdict in favor of appellee Scott Tractor & Equipment Co.,
Inc. ordering that he take nothing by his counterclaim and awarding Scott Tractor damages
and attorney's fees. By two issues, Hayden contends the trial court erred in disregarding
the jury's findings because (1) there was sufficient evidence that Scott Tractor was
negligent on the occasion in question, and (2) there was evidence of the market value of
the damaged equipment immediately before and after the accident. We affirm.

 Hayden was transporting a backhoe recently purchased from Scott Tractor on a
flatbed trailer. Shortly after leaving Scott Tractor, the trailer detached from his pickup and
toppled onto the roadway, damaging the backhoe.

 Hayden purchased the flatbed trailer from another Amarillo equipment dealer just
prior to obtaining the backhoe from Scott Tractor. Although he had pulled "many large
trailers," Hayden had never loaded or pulled a backhoe on a trailer, and requested that
Robert White, a salesman at Scott Tractor with prior experience loading heavy machinery,
load the machine and secure it for transport. White agreed and informed Hayden he would
need to purchase the proper booms and chains to secure the load.

 In order to position the machine, White drove the backhoe up two large ramps and
onto the rear of the trailer. During this maneuver, the immense weight of the backhoe
caused the rear wheels of Hayden's pickup to rise off the ground and created a "hinge
effect," allowing the pickup to pivot on its front wheels. As the backhoe was driven further
forward, the trailer leveled off, and the pickup lowered back to the ground. This movement
caused Hayden and his wife some concern; however, White assured the couple that he
had experienced this type of movement before and that it was "natural" given the design
of the trailer. White then proceeded to secure the backhoe to the trailer with booms and
chains.

 Once the backhoe was properly secured, Hayden and his wife left Scott Tractor and
merged onto Interstate 40. Suddenly, the trailer began rocking uncontrollably, causing the
rear wheels of Hayden's pickup to momentarily lose contact with the roadway. Eventually,
the trailer detached from the vehicle and rolled over onto the interstate, damaging both the
backhoe and the roadway. 

 Immediately following the incident, Hayden stopped payment on the $17,965.85
check he had tendered to Scott Tractor for the purchase price of the backhoe. Scott
Tractor filed a breach of contract action to recover the amount. In response, Hayden filed
a counterclaim for negligence asserting damages for the purchase price of the backhoe
and the $869.03 he paid to reimburse the State of Texas for damages to the interstate. 
Following a hearing, the trial court granted partial summary judgment in favor of Scott
Tractor and submitted Hayden's counterclaim to a jury. At the conclusion of the jury trial,
Hayden recovered a judgment against Scott Tractor in the amount of $16,946.89. Scott
Tractor then filed a motion to disregard the jury's finding asserting (1) there was no
evidence that Scott Tractor was negligent on the occasion in question, and (2) there was
no evidence of the market value of the backhoe immediately before or after the accident. 
Concluding there was no evidence of probative force to sustain the verdict, the trial court
granted Scott Tractor's motion notwithstanding the verdict and ordered that they recover
the full purchase price of the backhoe in addition to $2,500 in attorney's fees.

 

 By his first issue, Hayden contends the court erred in granting the motion
notwithstanding the verdict because there was sufficient evidence to allow a jury to
conclude that Scott Tractor was either negligent in loading the backhoe or negligent in
assuring him that the trailer he had purchased was sufficient for the purpose of hauling the
backhoe. We disagree.

 A trial court may disregard a jury's findings and grant a motion for judgment
notwithstanding the verdict only when there is no evidence upon which the jury could have
made its findings. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). In
other words, a court may render a judgment notwithstanding the verdict if a directed verdict
would have been proper. See Tex. R. Civ. P. 301; Fort Bend County Drainage Dist. v.
Sbrusch, 818 S.W.2d 392, 394 (Tex.1991).

 In reviewing a judgment notwithstanding the verdict, we must determine whether
there is any evidence upon which the jury could have made its finding. We review the
record in the light most favorable to the finding, considering only the evidence and
inferences that support the finding and rejecting any evidence and inferences to the
contrary. See Brown v. Bank of Galveston, N.A., 963 S.W.2d 511, 513 (Tex. 1998). If
more than a scintilla of evidence supports the finding, the jury's verdict must be upheld. 
Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). More than a scintilla of
evidence exists when the evidence enables reasonable minds to differ in their conclusions. 
See Tarrant Regional Water Dist. v. Gragg, 151 S.W.3d 546, 552 (Tex. 2004). However,
evidence that creates only a mere surmise or suspicion is no more than a scintilla and, thus
no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). See also
Williams v. Gaines, 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied) (holding
that "[p]robative evidence . . . must be more than a surmise or suspicion").

 In the present case, the only evidence presented regarding Scott Tractor's
negligence was the testimony of Hayden and his wife Kathleen. Hayden testified that when
the backhoe was driven onto the trailer and his pickup lifted off the ground, he became
"real concerned." He testified he was concerned as to whether his pickup was heavy
enough to handle the load. When he confronted Robert White with his concerns, White
told him "you'll be fine" and repeatedly assured him, "it wouldn't be a problem." Regarding
the cause of the accident, Hayden testified the trailer "began rocking wildly out of control"
and caused the rear wheels of his truck to lift off the ground. He stated, "I guess, that the
load of the backhoe caused it to flip and turn loose from the trailer. It broke the hitch." 
Kathleen testified she too became concerned when the truck lifted during loading and said
White assured them it was normal. She recalled that as they were driving on the interstate,
"the trailer started bouncing and swerving, and it just eventually-it just flipped."

 Although this testimony constitutes some evidence that the trailer was behaving
abnormally and that the incident resulted in damages, it does not suffice as evidence for
a jury finding that Scott Tractor was negligent. In order for a jury to find negligence, there
must be evidence of a duty, a breach of that duty, and damages proximately caused by the
breach. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). 
Proximate cause consists of both cause in fact and forseeability. Doe v. Boys Clubs of
Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). The jury was instructed that
proximate cause is "that cause which, in a natural and continuous sequence, produces an
event, and without which cause such event would not have occurred." They were further
instructed that "[i]n order to be a proximate cause, the act or omission complained of must
be such that a person using the degree of care required of him would have foreseen that
the event, or some similar event, might reasonably result therefrom." 

 We do not find any evidence of proximate cause in the record which would support
a verdict that an act or omission by Scott Tractor or any of its employees resulted in
damages to Hayden. In the absence of probative evidence of proximate cause, a jury is
left only to surmise or speculation. As we have previously held, the mere occurrence of
an accident is no evidence of negligence. See Allsup's Convenience Stores, Inc. v.
Warren, 934 S.W.2d 433, 436 (Tex.App.-Amarillo 1996, writ denied). Here, considering
only the evidence and inferences in the record that tend to support the finding, we fail to
find a scintilla of evidence which would support a finding of negligence on behalf of Scott
Tractor. Hayden's first issue is overruled. Our disposition of this issue pretermits
consideration of Hayden's remaining issue. Tex. R. App. P. 47.1.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice

 



 Priority="65" Name="Medium List 1 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0446-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 

APRIL 15, 2011

_____________________________

 

M
& B ASSOCIATES, INC. and WILLIAM LOHMAN,  

 

                                                                                         Appellants


v.

 

WELLS FARGO
BANK, N.A.,  

 

                                                                                         Appellee

_____________________________

 

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

 

NO. B37339-1007; HONORABLE EDWARD LEE SELF, PRESIDING

_____________________________

 

Memorandum Opinion

_____________________________

 

Before QUINN, C.J., and CAMPBELL  and PIRTLE,
JJ.

            Summary judgment was granted in
favor of Wells Fargo Bank, N.A. (Wells Fargo) on its suit to recover on a
promissory note executed by M & B Associates, Inc. and guaranteed by
William Lohman (collectively referred to as M & B).  The sole basis upon which M & B opposed
the motion for summary judgment and the only issue raised on appeal involves
arbitration.  That is, the promissory
note and the guaranty contained arbitration clauses which clauses prevented the
trial court from rendering a summary judgment.  
We disagree and affirm the judgment. 

            In response to the original petition
of Wells Fargo, M & B filed a general denial.  Nothing was said of arbitration in the
pleading.  Nor did anyone move the trial
court to stay the proceedings or compel the parties to submit to
arbitration.  Two months later, Wells
Fargo moved for summary judgment upon the note and guaranty.  M & B filed a response mentioning the
arbitration provisions and accompanied it with an affidavit allegedly
documenting the fact that arbitration had been demanded pursuant to the
agreements.  The response concluded with
a prayer requesting that this Court . . . deny Plaintiffs Motion for Final
Summary Judgment, or order such other relief as may be appropriate.  But, again, neither defendant moved the court
to either stay litigation or compel arbitration.   

            Next, the arbitration clauses read
as follows: Lender and each party to this agreement hereby agree, upon demand
by any party, to submit any Dispute to binding arbitration in accordance with
the terms of this Arbitration Program. 
So too did the document define the term Dispute.  The latter consisted of any dispute, claim
or controversy of any kind, whether in contract or tort, legal or equitable, .
. .  relating in any way to this
Agreement or any related agreement incorporating this Arbitration Program . . .
or any past, present, or future loans, transactions, contracts . . . of any
kind . . . .  

            To compel arbitration, a party must
apply to the court for it.  See 9 U.S.C.A. §3 (2009) (giving a court
the right, upon application of a party, to stay the trial of the action until
arbitration has been had in accordance with the agreement).[1]   Moreover, a party seeking to enforce an
arbitration agreement must establish the existence of a valid arbitration
agreement and that a dispute falls within the scope of it.  In re Bank One, N.A., 216 S.W.3d 825, 826 (Tex. 2007)
(orig. proceeding); Haddock v. Quinn, 287 S.W.3d 158, 169 (Tex. App.Fort
Worth 2009, pet. denied).  As already
noted, the record contains neither a motion to stay litigation nor to compel
arbitration.  This is of import because a
party having a right to arbitration need not invoke it.  Instead, this alternative means of resolving
a dispute may be waived.  See
In re Fleetwood Homes of Tex., L.P., 257 S.W.3d 692, 694 (Tex. 2008) (orig. proceeding)
(discussing waiver of arbitration). Therefore, the mere presence of an
arbitration clause in an agreement subject to litigation does not ipso
facto require the trial
court to sua sponte send the controversy to arbitration.  This is especially so when, as here, the
clause itself requires someone to demand arbitration.  See Penhollow Custom
Homes, LLC v. Kim, 320
S.W.3d 366, 377 (Tex. App.El Paso 2010, no pet.) (finding the failure to order
the parties to arbitration waived even though a motion to compel arbitration
was filed when no ruling on it appeared in the record).      

            It is true that the record contains
an affidavit executed by M & Bs attorney indicating that arbitration had
been requested.  Yet, the sum and
substance of the information provided consisted of the statement that the
affiant demanded arbitration of the Dispute regarding the Promissory Note and
Commercial Guaranty as per the arbitration clause of the Promissory Note and
Commercial Guaranty sued upon in the Lawsuit. 
Nothing was said about when the demand was made, by what means it was
made, the specific person or entity to whom it was made, and whether demand was
refused.  Omitting such information is
fatal for an affidavit must set forth facts which would be admissable in
evidence.  Tex. R. Civ. P. 166a(f).  Conclusory statements, that is, those that do
not provide the underlying facts to support it, Winchek v. Am. Exp.
Travel Related Servs. Co., 232 S.W.3d 197, 206 (Tex. App.Houston [1st Dist.] 2007, no
pet.), are insufficient to defeat summary judgment.  Ryland Group, Inc. v.
Hood, 924 S.W.2d 120,
122 (Tex. 1996); see Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984)
(finding an affidavit should be struck when it merely stated that an agreement
had been modified but did not state the time, place, and exact nature of the
modification).      

            Nor did the affiant disclose the
particular Dispute, if any, sought to be arbitrated.  Whether it was of the ilk contemplated by the
definition of Dispute is unknown.  And,
unless it is, arbitration is unavailable. 
See In re Bank One, N.A., 216 S.W.3d
at 826
(requiring a party
seeking to enforce an arbitration agreement to establish the existence of a
valid arbitration agreement and that a dispute falls within the
scope of it). It may
well be that we could easily guess at the disputes nature, but the rules underlying  summary judgment practice do not afford that
freedom.  It was incumbent upon M & B
to provide facts (as opposed to conclusory allegations) describing the
particular dispute, and it did not.  So,
we are unable to say that arbitration was an appropriate avenue of relief at
bar, which determination would be a condition precedent to reversing the
judgment.  

            In short, M & B failed to carry its
appellate burden of establishing that the trial court erred in concluding that
Wells Fargo was entitled to summary judgment as a matter of law.  So, we affirm the judgment. 

 

                                                                        Brian
Quinn 

                                                                        Chief
Justice

            

            











[1]It is undisputed that the
Federal Arbitration Act controls.